FILED

2012 SEP 2**8** AM 12: 00

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1   LIONEL Z. GLANCY (#134180)
2   MICHAEL GOLDBERG (#188669)
3   ROBERT V. PRONGAY (#270796)
     GLANCY BINKOW & GOLDBERG LLP
4   1925 Century Park East, Suite 2100
     Los Angeles, California 90067
5   Telephone: (310) 201-9150
6   Facsimile: (310) 201-9160

7

*Attorneys for Plaintiff Dennis W. Chew*

8

9            UNITED STATES DISTRICT COURT
10         CENTRAL DISTRICT OF CALIFORNIA

11

12   DENNIS W. CHEW, Individually and
     on Behalf of All Others Similarly
13   Situated,

14                      Plaintiff,
15
16         v.
17
18   PEREGRINE PHARMACEUTICALS,
     INC., STEVEN W. KING, PAUL J.
19   LYTLE, JOSEPH SHAN, and
     ROBERT GARNICK,
20
21                 Defendants.

No. **CV12-8380** –PSG (FMOx)

CLASS ACTION

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

22
23
24
25
26
27
28

Plaintiff Dennis W. Chew ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Peregrine Pharmaceuticals, Inc. ("Peregrine" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Peregrine; and (c) review of other publicly available information concerning Peregrine.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of purchasers of Peregrine's securities between July 16, 2012 and September 21, 2012, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Peregrine is a biopharmaceutical company with a portfolio of innovative monoclonal antibodies in clinical trials focused on the treatment and diagnosis of cancer. The Company is pursuing multiple clinical programs in cancer with its lead product candidate bavituximab and novel brain cancer agent Cotara.

3. On September 7, 2012, Peregrine issued a press release announcing that interim clinical trial results were presented from its randomized, double-blind,

placebo-controlled Phase II trial evaluating two dose levels of bavituximab plus docetaxel versus docetaxel plus placebo (control arm) in second-line non-small cell lung cancer patients.  The interim clinical trial results were presented as part of a late-breaking plenary presentation at the 2012 Chicago Multidisciplinary Symposium in Thoracic Oncology.

4.     On this news, shares of the Company's stock surged $1.43 per share, or 46.58%, on usually heavy volume.

5.     Shortly thereafter, on September 24, 2012, the Company disclosed that during the course of preparing for an end-of-phase II meeting with regulatory authorities and following recent data announcements from its randomized, double-blind placebo-controlled Phase II trial of bavituximab in second-line non-small cell lung cancer, it discovered major discrepancies between some patient sample test results and patient treatment code assignments.  Moreover, Peregrine informed investors that they should no longer rely on clinical data that the Company had previously reported from its Phase II bavituximab trial in patients with second-line non-small cell lung cancer.

6.     On this news, the Company's shares declined $4.23 per share, or 78.48%, to close on September 24, 2012, at $1.16 per share, on unusually heavy volume.

7.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's

business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that there were major discrepancies between some patient sample test results and patient treatment code assignments; (2) that, as such, the clinical data from the Company's randomized, double-blind placebo-controlled Phase II trial of bavituximab in second-line non-small cell lung cancer was unreliable; and (3) that, as result of the foregoing, the Defendants' positive statements about Peregrine's business, operations, and prospects, including those statements relating to the clinical data from the Company's randomized, double-blind placebo-controlled Phase II trial of bavituximab in second-line non-small cell lung cancer, lacked a reasonable basis.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b)

1    and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)). Substantial acts in

2

3    furtherance of the alleged fraud or the effects of the fraud have occurred in this

4    Judicial District. Many of the acts charged herein, including the preparation and

5    dissemination of materially false and/or misleading information, occurred in

6

7    substantial part in this Judicial District.

8         12.    In connection with the acts, transactions, and conduct alleged herein,

9
10   Defendants directly and indirectly used the means and instrumentalities of interstate

11   commerce, including the United States mail, interstate telephone communications,

12   and the facilities of a national securities exchange.

13
                                        **PARTIES**
14

15        13.    Plaintiff Dennis W. Chew, as set forth in the accompanying certification,

16   incorporated by reference herein, purchased Peregrine securities during the Class

17
18   Period, and suffered damages as a result of the federal securities law violations and

19   false and/or misleading statements and/or material omissions alleged herein.

20
21        14.    Defendant Peregrine is a Delaware corporation with its principal

22   executive offices located 14282 Franklin Avenue, Tustin, California, 92780.

23        15.    Defendant Steven W. King ("King") was, at all relevant times, Chief

24
25   Executive Officer ("CEO") and a Director of Peregrine.

26        16.    Defendant Paul J. Lytle ("Lytle") was, at all relevant times, Chief

27   Financial Officer ("CFO") of Peregrine.

28

17.     Defendant Joseph Shan ("Shan") was, at all relevant times, vice president of clinical and regulatory affairs at Peregrine.

18.     Defendant Robert Garnick ("Garnick") was, at all relevant times, head of regulatory affairs at Peregrine.

19.     Defendants King, Lytle, Shan, and Garnick, are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Peregrine's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Peregrine is a biopharmaceutical company with a portfolio of innovative monoclonal antibodies in clinical trials focused on the treatment and diagnosis of cancer.  The Company is pursuing multiple clinical programs in cancer with its lead product candidate bavituximab and novel brain cancer agent Cotara.

### Materially False and Misleading
### Statements Issued During the Class Period

21.     The Class Period begins on July 16, 2012.  On this day, the Company issued a press release entitled, "Peregrine Pharmaceuticals Reports Fourth Quarter and Fiscal Year 2012 Financial Results and Recent Developments.   Therein, the Company, in relevant part, stated:

"Since our last quarterly update, we reported transformational data from a robust double-blinded, placebo-controlled Phase II proof-of-principle trial evaluating the potential of bavituximab in treating second-line non-small cell lung cancer patients. The doubling of tumor response rates, a 50% increase in median progression free survival, and trends toward significant improvement in median overall survival strongly support advancing the program toward Phase III development," said Steven W. King, president and chief executive officer of Peregrine. "We could not be happier with the strength of the data from this robustly designed trial which gives us a clear direction and greatly enhances the probability of success as we look to Phase III development. These data have resulted in a surge in partnering interest for the program. We have already begun evaluating Phase III trial designs and we look forward to updating survival data from this and two other randomized studies in the second half of the year. In addition, we further established our leadership in this first-in-class PS-targeting platform with the recent

addition of a tumor imaging clinical program. This program has tremendous potential to complement the bavituximab program as well as provide valuable insight into the effectiveness of existing cancer therapies."

*ONCOLOGY PROGRAM HIGHLIGHTS*
*Bavituximab Lead Indication: Second-Line Non-Small Cell Lung Cancer*
In May, Peregrine announced positive top-line results from its randomized, double-blind, placebo-controlled Phase IIb trial evaluating two dose levels of bavituximab plus docetaxel versus docetaxel plus placebo (control arm) in second-line Stage IIIb/IV non-small cell lung cancer (NSCLC). Top-line data in 117 evaluable patients demonstrated a doubling of overall response rates (ORR), the primary endpoint, from 7.9% in the control arm to 15.0% and 17.9% in the 1.0 mg/kg and 3.0 mg/kg bavituximab containing arms, respectively. Progression-free survival (PFS), a secondary endpoint, was also improved in the bavituximab arms as compared to the control arm, with the control arm PFS of 3.0 months and the bavituximab arms of 4.2 and 4.5 months in the 1.0 mg/kg and 3.0 mg/kg bavituximab containing arms, respectively. Another secondary endpoint, median overall survival (OS), has already been determined in the control arm at less than 6 months, while the median has not been reached in either bavituximab-containing arm. Median OS from this trial is an event-driven secondary endpoint with results anticipated in 2012.

(Emphasis in original).

22. On September 7, 2012, the Company issued a press release entitled, "Interim Data From Peregrine's Phase II Trial in Second-Line Non-Small Cell Lung Cancer Demonstrate Doubling of Median Overall Survival in Bavituximab-Containing Arms." Therein, the Company, in relevant part, stated:

- Interim Data from Double-Blind, Placebo-Controlled Trial Presented at Late-Breaking Plenary Session at Leading Oncology Symposium

- Data Show Statistically Significant Improvement in Overall Survival for Patients Receiving Bavituximab Plus Docetaxel Versus Docetaxel Alone

- Clinical Data Strongly Support Advancing Program into Phase III Clinical Development

- Company to Host Conference Call on Monday, September 10, at 11:00 AM EDT

Peregrine Pharmaceuticals, Inc. (NASDAQ: PPHM), today announced that interim results were presented from its 121 patient randomized, double-blind, placebo-controlled Phase IIb trial in patients with refractory non-small cell lung cancer (NSCLC). The blinded study evaluated two dose levels of bavituximab (bavituximab-containing arms) given with docetaxel versus docetaxel plus placebo (control arm). The interim data showed a statistically significant improvement in overall survival (Hazard Ratio 0.524, p-value .0154) and a doubling of median overall survival (OS) in the bavituximab-containing arms compared to the control arm. The following interim data was presented as part of a late-breaking plenary presentation at the 2012 Chicago Multidisciplinary Symposium in Thoracic Oncology by David Gerber, M.D., Associate Professor of Internal Medicine at the University of Texas Southwestern Medical Center, a principal investigator in the trial.

\*     \*     \*

"This study was a rigorous trial designed to minimize bias and we are encouraged that this trial yielded such positive results in the most important endpoint, overall survival. The positive overall response rates and progression free survival in both bavituximab-containing arms seen earlier in the study has now translated into a statistically significant extension in overall survival for patients, a result rarely achieved in phase II clinical trials." said Joseph Shan, vice president of clinical and regulatory affairs at Peregrine. "The quality of this data gives us a solid foundation for designing a phase III trial with an increased probability of success. We are planning for an end-of-phase II meeting with the FDA as we plan to initiate this trial by mid-2013."

The trial enrolled 121 patients (117 evaluable per the study protocol)

- 8 -

with second-line non-squamous NSCLC following one prior chemotherapy regimen at over 40 clinical centers. Patients were equally randomized to 1 of the 3 treatment arms, docetaxel (75mg/m2) plus either placebo, 1 mg/kg bavituximab, or 3 mg/kg bavituximab until disease progression. Approximately 50% of the patients were enrolled in the U.S. and 50% were enrolled internationally with equal distribution between all treatment groups.

"Robust data from this Phase II trial clearly demonstrate a significant benefit in overall survival with a good safety profile in patients receiving bavituximab plus docetaxel compared to those receiving docetaxel plus placebo," said Steven W. King, president and chief executive officer of Peregrine. "We are currently in discussions with several potential pharmaceutical partners who have expressed great interest in our bavituximab oncology program. It is our goal to identify the optimal partner to assist with the design and logistics of a multinational Phase III pivotal trial."

The interim results from the study showed no significant safety differences between the three treatment arms as determined by the trial's independent data monitoring committee. Baseline characteristics were well balanced across all three treatment arms of the study, including performance (ECOG) status, age, gender, and race. Tumor responses were determined in accordance with Response Evaluation Criteria In Solid Tumors (RECIST 1.1) based on blinded central radiology review.

"The median overall survival results from the Proof-of Concept study are truly outstanding and great news for patients. Statistically significant overall survival results at this stage of development are rare and have put us in an excellent position for advancing the program. Our attention is now turned to an end of phase II meeting by year end which will help us define the most efficient path forward to potential regulatory approval," said Robert Garnick, PhD, head of regulatory affairs at Peregrine. "A global Phase III trial designed very similarly to the robust design of this Phase II trial greatly increases bavituximab's likelihood of success."

23.    On September 10, 2012, the Company issued a press release entitled,

"Peregrine Pharmaceuticals Reports First Quarter Fiscal Year 2013 Financial Results

- 9 -

and Recent Developments." Therein, the Company, in relevant part, stated:

> *Interim Data Show Doubling of Median Overall Survival in Bavituximab-Treated Patients from Double-Blind, Placebo-Controlled Phase II Trial in Second-Line Non-Small Cell Lung Cancer; Recent Data Strongly Support Advancing Bavituximab Program Into Phase III Clinical Development*

*       *       *

TUSTIN, CA -- (Marketwire) -- 09/10/12 -- Peregrine Pharmaceuticals, Inc. (NASDAQ: PPHM), a biopharmaceutical company developing first-in-class monoclonal antibodies focused on the treatment and diagnosis of cancer, today announced financial results for the first quarter ended July 31, 2012 of fiscal year (FY) 2013 and provided an update on its advancing clinical pipeline and other corporate developments.

"We have achieved major milestones since the end of last quarter with the unblinding of our proof-of-principle bavituximab study in second-line NSCLC in May and the recent announcement of overall survival data from the study being the most significant. The statistically significant overall survival seen in that study is an obvious green light for us to begin plans to advance the program into Phase III and goes a long way toward validating the technology platform," said Steven W. King, president and chief executive officer of Peregrine. "Following these exciting developments, the upcoming milestones for the program include additional clinical data from eight ongoing bavituximab clinical trials, an end of Phase II meeting with the FDA expected by year end, and potential partnership as the result of ongoing discussions. This is truly an exciting time at Peregrine and we look forward to advancing the bavituximab program as well as the rest of our business operations."

*BAVITUXIMAB ONCOLOGY PROGRAM HIGHLIGHTS*
*Lead Indication: Second-Line Non-Small Cell Lung Cancer*
Last week, in a late-breaker, oral plenary presentation at the 2012 Chicago Multidisciplinary Symposium in Thoracic Oncology meeting, interim data was presented from a randomized, double-blind, placebo-controlled Phase IIb trial evaluating two dose levels of bavituximab (bavituximab-containing arms) plus docetaxel versus docetaxel plus placebo (control arm) in second-line Stage IIIb/IV

non-small cell lung cancer (NSCLC). This trial enrolled 121 patients with second-line Stage IIIb or Stage IV non-squamous NSCLC following one prior chemotherapy regimen and patients were equally randomized to 1 of the 3 treatment arms, with 117 of the enrolled patients being evaluable per the clinical protocol. Patients received up to 6 cycles of docetaxel (75mg/m2) plus either placebo, 1 mg/kg bavituximab, or 3 mg/kg bavituximab until disease progression. Recent data from the trial showed a doubling of median overall survival (OS) in both bavituximab-containing arms compared to the control arm and a statistically significant improvement in overall survival. In addition, bavituximab continues to be well-tolerated. Given the magnitude of this data, Peregrine is preparing for an End-of-Phase II meeting with the U.S. Food and Drug Administration (FDA) by the end of calendar year 2012 that should allow us to initiate Phase III by mid-2013.

"The unique immune directed attack of bavituximab and preliminary survival advantage of far greater magnitude than what has been observed historically with anti-angiogenesis agents provide potentially yet another example of clinically relevant immune directed therapy moving forward," said John Nemunaitis, M.D., executive director of the Mary Crowley Cancer Research Centers and an investigator in Peregrine's Phase II bavituximab second-line NSCLC clinical trial.

*Additional Bavituximab Clinical Trials*

Peregrine currently has seven additional ongoing clinical trials as follows:

- A randomized, open-label, Phase II clinical trial evaluating bavituximab plus carboplatin and paclitaxel versus carboplatin and paclitaxel alone in 83 evaluable patients with previously untreated Stage IIIb or Stage IV NSCLC patients completed enrollment in September of 2011 and the event-driven median overall survival data will be available upon maturation.

- A randomized, open-label, Phase II clinical trial evaluating bavituximab plus gemcitabine versus gemcitabine alone in 70 patients with previously untreated Stage IV pancreatic cancer completed enrollment in June 2012. The primary endpoint, median OS, is an event-driven endpoint and will be reported once reached.

- Phase I/II Investigator Sponsored Trial (IST) investigating bavituximab in combination with sorafenib in patients with advanced hepatocellular carcinoma (liver cancer). The Phase I portion of the trial has completed patient enrollment.

- A Phase I/II IST evaluating bavituximab in combination with cabazitaxel in patients with second-line castration-resistant prostate cancer.

- A Phase Ib IST evaluating bavituximab in combination with carboplatin and pemetrexed in patients with previously untreated Stage IV NSCLC.

- A Phase I IST evaluating bavituximab in combination with paclitaxel in up to 14 patients with HER2-negative metastatic breast cancer.

- A Phase I IST evaluating bavituximab in combination with capecitabine and radiation therapy in patients with Stage II or III rectal adenocarcinoma.

*COTARA PROGRAM HIGHLIGHTS*

Peregrine's single-administration approach to treating recurrent glioblastoma multiforme (GBM) has shown encouraging 9.3 month median overall survival data from a Phase II trial in 41 patients. Peregrine and the FDA continue to advance discussions surrounding the negotiation of a pivotal trial design. The company plans to seek partners both in the U.S. and internationally to support the development of Cotara for this deadly form of brain cancer.

*IMAGING PROGRAM HIGHLIGHTS*

PS-Targeting Molecular Imaging Program

In April 2012, Peregrine launched its experimental phosphatidylserine (PS)-targeting molecular imaging candidate, 124I-PGN650, into clinical development for the imaging of multiple solid tumor types. The primary goal of the trial is to estimate radiation dosimetry in critical and non-critical organs. Secondary objectives of the trial are tumor imaging and safety. Patients are currently being enrolled in the trial.

(Emphasis in original).

24.     On September 10, 2012, Peregrine filed its Quarterly Report with the SEC on Form 10-Q for the 2013 fiscal first quarter. The Company's Form 10-Q was signed by Defendants King and Lytle. Therein, the Company, in relevant part, stated:

> In addition, on September 7, 2012, we presented compelling interim median overall survival data ("OS"), another secondary endpoint from the trial, at the 2012 Chicago Multidisciplinary Symposium in Thoracic Oncology. The data presented showed a doubling of median OS in each of the bavituximab-containing arms compared to the control arm, representing a significant improvement in survival.
>
> Based on these encouraging data and our discussions with medical advisors, we are actively preparing for an End-of-Phase II meeting with the FDA by the end of calendar year 2012 that should allow us to initiate a Phase III trial with bavituximab in second-line NSCLC by mid-calendar year 2013.

25.     The statements contained in ¶¶21-24, were materially false and/or misleading when made because Defendants failed to disclose or indicate the following: (1) that there were major discrepancies between some patient sample test results and patient treatment code assignments; (2) that, as such, the clinical data from the Company's randomized, double-blind placebo-controlled Phase II trial of bavituximab in second-line non-small cell lung cancer was unreliable; and (3) that, as result of the foregoing, the Defendants' positive statements about Peregrine's business, operations, and prospects, including those statements relating to the clinical data from the Company's randomized, double-blind placebo-controlled Phase II trial of bavituximab in second-line non-small cell lung cancer, lacked a reasonable basis.

**Disclosures at the End of the Class Period**

26.     On September 24, 2012, the Company issued a press release entitled, "Peregrine Pharmaceuticals Announces That It Has Discovered Major Discrepancies in Treatment Group Coding by an Independent Third-Party Vendor Responsible for Distribution of Blinded Investigational Product Used in Its Bavituximab Phase II Second-Line Non-Small Cell Lung Cancer Trial." Therein, the Company, in relevant part, disclosed:

> *The Company Is Currently Conducting a Detailed Review, Including Assessing Its Impact on Overall Trial Results; Investors Should Not Rely on Previously Reported Clinical Data Disclosed From This Phase II Trial at This Time; These Recent Findings Do Not Impact Other Ongoing Bavituximab Clinical Trials*
>
> TUSTIN, CA -- (Marketwire) -- 09/24/12 -- Peregrine Pharmaceuticals (NASDAQ: PPHM) announced today that during the course of preparing for an end-of-phase II meeting with regulatory authorities and following recent data announcements from its randomized, double-blind placebo-controlled Phase II trial of bavituximab in second-line non-small cell lung cancer, it discovered major discrepancies between some patient sample test results and patient treatment code assignments. Due to the double-blind nature of the trial, Peregrine was not permitted to have access to either patient group assignments or related product coding information. As part of the trial's execution, Peregrine contracted with independent third-party contractors to execute treatment group assignments and oversee clinical trial material coding and distribution according to established procedures. A subsequent review of information has determined that the source of these discrepancies appear to have been associated with the independent third-party contracted to code and distribute investigational drug product.
>
> This discrepancy is specific to this trial and will have no impact on other ongoing bavituximab trials.

Peregrine intends to communicate further as soon as it is able to determine the impact of this issue. In the meantime, investors should not rely on clinical data that the company disclosed on or before September 7, 2012 from its Phase II bavituximab trial in patients with second-line non-small cell lung cancer or any presentations or other documents related to this Phase II trial.

(Emphasis in original).

27.     On this news, the Company's shares declined $4.23 per share, or 78.48%, to close on September 24, 2012, at $1.16 per share, on unusually heavy volume.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased Peregrine securities between July 16, 2012 and September 21, 2012, inclusive (the "Class Period") and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

29.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Peregrine's securities were actively traded on the National Association of Securities Dealers Automated Quotations Market ("NASDAQ"). While the exact number of Class members is unknown to

Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Millions of Peregrine shares were traded publicly during the Class Period on the NYSE. As of September 7, 2012, the Company had 104,191,176 shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Peregrine or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

31.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

32.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public

during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Peregrine; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

33.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

34.    The market for Peregrine's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Peregrine's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Peregrine's securities relying upon the integrity of the market price of the Company's securities and market information relating to Peregrine, and have been damaged thereby.

35.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Peregrine's securities, by publicly issuing false

and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Peregrine's business, operations, and prospects as alleged herein.

36.   At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Peregrine's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

1

## **LOSS CAUSATION**

37.   Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

38.   During the Class Period, Plaintiff and the Class purchased Peregrine's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors's losses.

## **SCIENTER ALLEGATIONS**

39.   As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Peregrine, his/her control over, and/or receipt and/or modification of Peregrine's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Peregrine, participated in the fraudulent scheme

1    alleged herein.

2            **APPLICABILITY OF PRESUMPTION OF RELIANCE**
3            **(FRAUD-ON-THE-MARKET DOCTRINE)**

4            40.    The market for Peregrine's securities was open, well-developed and
5
6    efficient at all relevant times.  As a result of the materially false and/or misleading
7    statements and/or failures to disclose, Peregrine's securities traded at artificially
8
9    inflated prices during the Class Period.   On September 21, 2012, the Company's
10   stock closed at a Class Period high of $5.39 per share.  Plaintiff and other members
11
12   of the Class purchased or otherwise acquired the Company's securities relying upon
13   the integrity of the market price of Peregrine's securities and market information
14   relating to Peregrine, and have been damaged thereby.

15           41.    During the Class Period, the artificial inflation of Peregrine's securities
16
17   was caused by the material misrepresentations and/or omissions particularized in this
18   Complaint causing the damages sustained by Plaintiff and other members of the
19
20   Class.  As described herein, during the Class Period, Defendants made or caused to
21   be made a series of materially false and/or misleading statements about Peregrine's
22
23   business, prospects, and operations.  These material misstatements and/or omissions
24   created an unrealistically positive assessment of Peregrine and its business,
25   operations, and prospects, thus causing the price of the Company's securities to be
26
27   artificially inflated at all relevant times, and when disclosed, negatively affected the
28   value of the Company securities.  Defendants' materially false and/or misleading

- 20 -

statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

42.    At all relevant times, the market for Peregrine's securities was an efficient market for the following reasons, among others:

(a)    Peregrine securities met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    as a regulated issuer, Peregrine filed periodic public reports with the SEC and/or the NYSE;

(c)    Peregrine regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Peregrine was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.    Each of these reports was publicly available and entered the public marketplace.

43.    As a result of the foregoing, the market for Peregrine's securities

promptly digested current information regarding Peregrine from all publicly available sources and reflected such information in Peregrine's stock price. Under these circumstances, all purchasers of Peregrine's securities during the Class Period suffered similar injury through their purchase of Peregrine's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

44.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Peregrine who knew that the

statement was false when made.

### FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

45.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Peregrine's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

47.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Peregrine's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

48.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Peregrine's financial well-being and prospects, as specified herein.

49.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Peregrine's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Peregrine and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

50.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of

these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

51.    The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Peregrine's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or

1   omissions alleged, were reckless in failing to obtain such knowledge by deliberately

2
3   refraining from taking those steps necessary to discover whether those statements

4   were false or misleading.

5       52.    As a result of the dissemination of the materially false and/or misleading

6
7   information and/or failure to disclose material facts, as set forth above, the market

8   price of Peregrine's securities was artificially inflated during the Class Period.  In

9
10  ignorance of the fact that market prices of the Company's securities were artificially

11  inflated, and relying directly or indirectly on the false and misleading statements

12  made by Defendants, or upon the integrity of the market in which the securities

13
14  trades, and/or in the absence of material adverse information that was known to or

15  recklessly disregarded by Defendants, but not disclosed in public statements by

16  Defendants during the Class Period, Plaintiff and the other members of the Class

17
18  acquired Peregrine's securities during the Class Period at artificially high prices and

19  were damaged thereby.

20      53.    At the time of said misrepresentations and/or omissions, Plaintiff and

21
22  other members of the Class were ignorant of their falsity, and believed them to be

23  true.  Had Plaintiff and the other members of the Class and the marketplace known

24
25  the truth regarding the problems that Peregrine was experiencing, which were not

26  disclosed by Defendants, Plaintiff and other members of the Class would not have

27  purchased or otherwise acquired their Peregrine securities, or, if they had acquired

28

1   such securities during the Class Period, they would not have done so at the artificially

2
3   inflated prices which they paid.

4       54.   By virtue of the foregoing, Defendants have violated Section 10(b) of

5   the Exchange Act and Rule 10b-5 promulgated thereunder.

6
7       55.   As a direct and proximate result of Defendants' wrongful conduct,

8   Plaintiff and the  other members of the Class suffered damages in connection with

9
10  their respective purchases and sales of the Company's securities during the Class

11  Period.

12                          **SECOND CLAIM**
13                    **Violation of Section 20(a) of**
                 **The Exchange Act Against the Individual Defendants**
14

15      56.   Plaintiff repeats and realleges each and every allegation contained above

16  as if fully set forth herein.

17
18      57.   The Individual Defendants acted as controlling persons of Peregrine

19  within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue

20
21  of their high-level positions, and their ownership and contractual rights, participation

22  in and/or awareness of the Company's operations and/or intimate knowledge of the

23  false financial statements filed by the Company with the SEC and disseminated to the

24
25  investing public, the Individual Defendants had the power to influence and control

26  and did influence and control, directly or indirectly, the decision-making of the

27  Company, including the content and dissemination of the various statements which
28

Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58.    In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

59.    As set forth above, Peregrine and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.   By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

1      (b)    Awarding compensatory damages in favor of Plaintiff and the other

2  Class members against all defendants, jointly and severally, for all damages sustained

3  

4  as a result of Defendants' wrongdoing, in an amount to be proven at trial, including

5  interest thereon;

6  

7      (c)    Awarding Plaintiff and the Class their reasonable costs and expenses

8  incurred in this action, including counsel fees and expert fees; and

9      (d)    Such other and further relief as the Court may deem just and proper.

10  

11  **JURY TRIAL DEMANDED**

12      Plaintiff hereby demands a trial by jury.

13  DATED: September 28, 2012        GLANCY BINKOW & GOLDBERG LLP

14  

15  

16  By:_____

        Robert V. Prongay

17          Lionel Z. Glancy

18          Michael Goldberg

        1925 Century Park East, Suite 2100

19          Los Angeles, California 90067

20          Telephone: (310) 201-9150

        Facsimile: (310) 201-9160

21  

22          *Attorneys for Plaintiff Dennis W. Chew*

23  

24  

25  

26  

27  

28

GLANCY BINKOW & GOLDBERG LLP

## SWORN CERTIFICATION OF PLAINTIFF
## PEREGRINE PHARMACEUTICALS, INC. SECURITIES LITIGATION

I, ___Dennis W. Chew_____, certify that:

(Please print your name)

1. I have reviewed the Complaint and authorized its filing.

2. I did not purchase Peregrine Pharmaceuticals, Inc., the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Peregrine Pharmaceuticals, Inc. during the Class Period set forth in the Complaint are as follows:

I bought _2200_ shares on _9_/_21_/_12_ at $ _5.269_ per share

I bought _____ shares on ____/____/_____ at $ _____ per share

I bought _____ shares on ____/____/_____ at $ _____ per share

I bought _____ shares on ____/____/_____ at $ _____ per share

I sold _____ shares on ____/____/_____ at $ _____ per share

I sold _____ shares on ____/____/_____ at $ _____ per share

I sold _____ shares on ____/____/_____ at $ _____ per share

(List additional transactions on separate page if necessary)

5. I have not served as a representative party on behalf of a class under this title during the last three years.

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Date: _9/27/12_         _Dennis W Chew_

(Please sign your name above)

Name & Address:
Robert V. Prongay (#270796)
Glancy Binkow & Goldberg LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Dennis W. Chew, Individually and On Behalf of All Others Similarly Situated,<br><br>PLAINTIFF(S)<br><br>v.<br><br>PEREGRINE PHARMACEUTICALS, INC., STEVEN W. KING, PAUL J. LYTLE, JOSEPH SHAN, and ROBERT GARNICK,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV12-8380** -PSG (FMOx)<br><br><br>**SUMMONS** |

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Robert V. Prongay_____, whose address is _1925 Century Park East, Suite 2100, Los Angeles, CA 90067, Tel. (310) 201-9150____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:    SEP 2 8 2012  _____

By: _____
            Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

Name & Address:
Robert V. Prongay (#270796)
Glancy Binkow & Goldberg LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Dennis W. Chew, Individually and On Behalf of All Others Similarly Situated,<br><br>PLAINTIFF(S)<br><br>v.<br><br>PEREGRINE PHARMACEUTICALS, INC., STEVEN W. KING, PAUL J. LYTLE, JOSEPH SHAN, and ROBERT GARNICK,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV12-8380**-PSG (FMOx)<br><br><br>**SUMMONS** |

TO:     DEFENDANT(S):

       A lawsuit has been filed against you.

       Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Robert V. Prongay_____, whose address is _1925 Century Park East, Suite 2100, Los Angeles, CA 90067, Tel. (310) 201-9150_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___SEP 2 8 2012_____

By: _____
               Deputy Clerk

               *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Philip S. Gutierrez and the assigned discovery Magistrate Judge is Fernando M. Olguin.

The case number on all documents filed with the Court should read as follows:

## CV12- 8380 PSG (FMOx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Dennis W. Chew, Individually And On Behalf of All Others Similarly Situated, | PEREGRINE PHARMACEUTICALS, INC., STEVEN W. KING, PAUL J. LYTLE, JOSEPH SHAN, and ROBERT GARNICK, |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Robert V. Prongay (#270796), Glancy Binkow & Goldberg LLP<br>1925 Century Park East, Suite 2100, Los Angeles, CA 90067<br>Telephone: (310) 201-9150 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes ☐ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** to be proved

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☑ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | IMMIGRATION | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 660 Occupational Safety / Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:   Case Number:** CV12-8380

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:**  Have any cases been previously filed in this court that are related to the present case?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                                      ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                                      ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                                      ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
| --- | --- |
| | Plaintiff Dennis W. Chew - Burlington County, NJ |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
| --- | --- |
| PEREGRINE PHARMACEUTICALS, INC., STEVEN W. KING, PAUL J. LYTLE, JOSEPH SHAN, and ROBERT GARNICK - Tustin, CA | |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
      **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
| --- | --- |
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER):  _____   Date September 28, 2012

**Notice to Counsel/Parties:**   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
| --- | --- | --- |
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |