UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**    #8/15/18/19; JS-6

| Case No. | CV 12 - 8380 PSG (FMOx) CV 12-8400-PSG (FMOx) SA CV 12-1647-PSG (FMOx) | Date | February 5, 2013 |
|---|---|---|---|
| Title | *Dennis W. Chew v. Peregrine Pharmaceuticals, Inc., et al.* *James T Jerie v. Peregrine Pharmaceuticals Inc et al* *Nathaniel L Anderson v. Peregrine Pharmaceuticals Inc et al* | | |

Present:    The Honorable Philip S. Gutierrez, United States District Judge

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**       **(In Chambers): Order CONSOLIDATING actions and APPOINTING lead plaintiff**

Before the Court are four motions for consolidation and appointment as lead counsel.[1] *See* Dkts. # 8, 15, 18, 19. The Court finds the matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering arguments in the competing motions, the Court consolidates the related cases, appoints movant James T. Fahey as lead plaintiff and appoints his counsel as lead counsel.

I.    <u>Background</u>

On September 28, 2012, three separate securities class action lawsuits were filed against Peregrine Pharmaceuticals, Inc. ("Peregrine") and several individual Peregrine representatives ("Individual Defendants" and, collectively with Peregrine, "Defendants"). The three cases are: (1) the above-captioned case, *Dennis W. Chew v. Peregrine Pharmaceuticals, Inc.*, No. 12-CV-8380-PSG (FMOx) ("Chew Action"); (2) *Nathaniel L. Anderson v. Peregrine Pharmaceuticals, Inc.*, No. 12-CV-1647-PSG (FMOx) ("Anderson Action"); and (3) *James T. Jerie v. Peregrine Pharmaceuticals, Inc.*, No. 12-CV-8400-PSG (FMOx) ("Jerie Action"). The Plaintiffs in the three actions are referred to collectively as "Plaintiffs," while each individual Plaintiff is identified by name.

Peregrine is a pharmaceutical company that develops and manufactures various drugs for the treatment of cancer and viral infections. One of Peregrine's products is bavituximab, an experimental drug used to treat non-small cell lung cancer. The actions allege that Peregrine

---

[1] There were originally six motions, but two have since been withdrawn. *See* Dkts. # 23 & 32, 29 & 41.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    #8/15/18/19; JS-6

| Case No. | CV 12 - 8380 PSG (FMOx) <br> CV 12-8400-PSG (FMOx) <br> SA CV 12-1647-PSG (FMOx) | Date | February 5, 2013 |
|---|---|---|---|
| Title | *Dennis W. Chew v. Peregrine Pharmaceuticals, Inc., et al.* <br> *James T Jerie v. Peregrine Pharmaceuticals Inc et al* <br> *Nathaniel L Anderson v. Peregrine Pharmaceuticals Inc et al* | | |

disseminated false and misleading statements to the public about bavituximab's effectiveness in treating cancer, making it impossible for shareholders to meaningfully or realistically evaluate the drug's prospects and artificially inflating the price of Peregrine's stock. The alleged misrepresentations and omissions were revealed on September 24, 2012, when Peregrine issued a press release warning investors that they should not rely on clinical data previously disclosed because of discrepancies in clinical trials.

All three actions are based on allegations that Peregrine's false and misleading statements caused Peregrine's stock to trade at artificially inflated prices. The named Plaintiff in each action seeks to represent a class of persons who purchased or acquired Peregrine securities in the summer and early fall of 2012, though the three actions define the classes somewhat differently. *See Anderson Compl.* ¶ 38; *Chew Compl.* ¶ 28; *Jerie Compl.* ¶ 36. The Class Period covers from approximately mid-July until the end of September 2012, though each action also defines the period somewhat differently. *See Anderson Compl.* ¶ 6 (covering a period from August 30, 2012 through September 26, 2012); *Chew Compl.* ¶ 28 (covering a period from July 16, 2012 through September 21, 2012); *Jerie Compl.* ¶ 1 (covering a period from July 17, 2012 through September 26, 2012). Plaintiffs allege claims for violation of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5, promulgated thereunder, against all Defendants. *Anderson Compl.* ¶¶ 44-47; *Chew Compl.* ¶¶ 45-55; *Jerie Compl.* ¶¶ 44-53. Plaintiffs also allege claims for violation of § 20(a) of the Exchange Act against the Individual Defendants. *Anderson Compl.* ¶¶ 48-49; *Chew Compl.* ¶¶ 56-59; *Jerie Compl.* ¶¶ 54-59.

On September 28, 2012, the pendency of the action was publicized in BusinessWire ("BusinessWire Article"). *See Westerman Decl.*, Ex. A. The BusinessWire Article stated that a class action lawsuit had been filed on behalf of Peregrine investors who purchased Peregrine securities between September 7, 2012 and September 21, 2012, inclusive. *Id.* The BusinessWire Article informed class members that they may move to serve as lead plaintiff in the case within 60 days of the article's publication. *Id.* Accordingly, on November 27, 2012, several plaintiffs and their attorneys filed motions to consolidate the cases and be appointed as lead plaintiff and lead counsel under the Private Litigation Reform Act of 1995 ("PSLRA"). *See* Dkts. # 8, 15, 18, 19. The plaintiffs are: (1) James T. Fahey ("Fahey"); (2) Marshall Lee ("Lee"); (3) Jason Ebach and Mary Legnetti ("Ebach & Legnetti"); and (4) Allan L. Tereshko, Edward Buzz Bradley, and Edward Arduino ("Tereshko Investors Group"). Two similar motions, one filed by Leonard Lucas ("Lucas") and one filed by DeQuincy Lewis, Sundarraj Doraoswamy, James T. Jerie, Gary Beauchamp, and Garry L. Miller (collectively, "Lewis Movants"), have been withdrawn. Lucas and the Lewis Group withdrew after concluding that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  #8/15/18/19; JS-6

| Case No. | CV 12 - 8380 PSG (FMOx) <br> CV 12-8400-PSG (FMOx) <br> SA CV 12-1647-PSG (FMOx) | Date | February 5, 2013 |
|---|---|---|---|
| Title | *Dennis W. Chew v. Peregrine Pharmaceuticals, Inc., et al.* <br> *James T Jerie v. Peregrine Pharmaceuticals Inc et al* <br> *Nathaniel L Anderson v. Peregrine Pharmaceuticals Inc et al* | | |

they did not appear to have the largest financial interest in the case.  *See* Dkts. # 32, 41.  The Tereskho Investors Group has also concluded that it does not have the largest financial stake in the outcome of the litigation, but has stated that the group remains willing to serve as lead plaintiff if the presumptive plaintiff is found to be an inadequate representative. *See* Dkt. # 33. Lucas, the Lewis Movants, and the Tereshko Investors Group have identified Fahey as the movant with the highest financial stake in the litigation.  *See* .  *See* Dkts. # 32-33, 41.

II.      Motion for Consolidation

        Federal Rule of Civil Procedure 42(a) permits a court to consolidate cases when the actions "involve a common question of law or fact."  Fed. R. Civ. P. 42(a).  Securities actions under the PSLRA may be consolidated pursuant to the traditional legal standards of the Federal Rules.  *See, e.g., Takeda v. Turbodyne Tech., Inc.*, 67 F. Supp. 2d 1129, 1132-33 (C.D. Cal. 1999) (applying Rule 42(a) to a motion to consolidate a securities action brought under the Exchange Act and the PSLRA).  In evaluating whether to consolidate cases, courts consider not only whether the actions involve common questions of law and fact, but also whether judicial economy and convenience would be served by consolidation and whether consolidation would cause inconvenience, delay, confusion, or prejudice to any party.  *See, e.g.*, *id.; see also Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284-85 (2nd Cir. 1990) (noting that the court must balance considerations of convenience and economy against the concern that all parties receive a fair and impartial trial); *Osher v. Guess?, Inc.*, No. CV01-00871 LGB (RNBx), 2001 WL 861694, at *1-2 (C.D. Cal. Apr. 26, 2001) (considering whether consolidation of a securities action would be efficient and fair to the parties).  In the context of a class action, courts also consider how consolidation would affect absent class members.  *Takeda*, 67 F. Supp. 2d at 1130, 1132-33.

        The PSLRA requires that if "any party has sought to consolidate . . . actions for pretrial purposes or for trial, the court shall not [appoint a lead plaintiff] until after the decision on the motion to consolidate is rendered.  As soon as practicable after such decision is rendered, the court shall appoint the most adequate plaintiff as lead plaintiff for the actions."  15 U.S.C. § 78u-4(a)(3)(B)(ii).

        Here, common questions of law and fact exist between the related actions.  Each action is a shareholder class action alleging violations of federal securities laws based on the same conduct by the same defendants and is brought on behalf of a class of purchasers of Peregrine securities.  Specifically, all of the actions are based on Peregrine's alleged dissemination of false and misleading information about the drug bavituximab, which caused the price of Peregrine's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    #8/15/18/19; JS-6

| Case No. | CV 12 - 8380 PSG (FMOx) <br> CV 12-8400-PSG (FMOx) <br> SA CV 12-1647-PSG (FMOx) | Date | February 5, 2013 |
|---|---|---|---|
| Title | *Dennis W. Chew v. Peregrine Pharmaceuticals, Inc., et al.* <br> *James T Jerie v. Peregrine Pharmaceuticals Inc et al* <br> *Nathaniel L Anderson v. Peregrine Pharmaceuticals Inc et al* | | |

stock to be artificially inflated.  Similarly, the actions all assert claims under the §§ 10(b) and 20 of the Exchange Act, as well as Rule 10b.

Moreover, the minor differences between the three actions do not make consolidation improper, as "[n]either Rule 42 nor the PSLRA demands that the actions be identical before they may be consolidated."  *Takeda*, 67 F. Supp. 2d at 1133.  In this case, the actions cover different class periods and contain slight variations in the language describing the class.  The Anderson and Jerie Actions include "all those who purchased or *otherwise acquired*" Peregrine stock, while the Chew action refers only to those who purchased Peregrine stock, and the Chew and Jerie Actions refer to "securities" while the Anderson Action refers to "common stock."  *See Anderson Compl.* ¶ 38; *Chew Compl.* ¶ 28; *Jerie Compl.* ¶ 36.  Further, the Chew and Jerie Actions begin the class period in mid-July—July 16 and 17, respectively—while the Anderson Action covers a period beginning only on August 30.  *See Anderson Compl.* ¶ 6; *Chew Compl.* ¶ 28; *Jerie Compl.* ¶ 1.  The class periods in each of the actions also end on different dates, all in the end of September.  However, these small differences do not render consolidation inappropriate.  "Courts have generally held that differing class periods alone will not defeat consolidation or create conflict."  *Takeda*, 67 F. Supp. 2d at 1133.  Accordingly, consolidation may be appropriate despite the differing class periods.  The somewhat different language used in the class period also does not defeat consolidation, as the claims are all based on the same underlying facts and alleged misconduct.  *See Osher*, 2001 WL 861694, at *2 (consolidating securities actions when there were only "minor variations" and the actions were based on "identical allegations of misrepresentations and omissions" by the defendant); *Takeda*, 67 F. Supp. 2d at 1133 (consolidating actions that were based on the same alleged conduct with only minor differences in the class period and some differences in the named defendants in the two actions).  Moreover, the Court is confident that the class periods and definitions can be refined to appropriately identify the relevant investors and time frame when the appointed lead plaintiff submits a consolidated complaint.  In sum, the Court concludes that there are "common questions of law and fact" making consolidation proper.  *See* Fed. R. Civ. P. 42(a).

Furthermore, consolidation of the related lawsuits would avoid needless costs and delays. Consolidation would avoid duplication of effort by the parties during pretrial discovery and in trial.  It would also allow for efficient administration of the litigation.  Finally, no party has expressed opposition to consolidation and the Court is privy to no evidence to suggest that consolidation would harm absent class members or cause inconvenience, delay, confusion, or prejudice to any party.  Therefore, consolidation is appropriate.  *See id*; *Osher*, 2001 WL 861694, at *2 (consolidating related cases after finding that consolidation would be efficient and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     #8/15/18/19; JS-6

| Case No. | CV 12 - 8380 PSG (FMOx) <br> CV 12-8400-PSG (FMOx) <br> SA CV 12-1647-PSG (FMOx) | Date | February 5, 2013 |
|---|---|---|---|
| Title | *Dennis W. Chew v. Peregrine Pharmaceuticals, Inc., et al.* <br> *James T Jerie v. Peregrine Pharmaceuticals Inc et al* <br> *Nathaniel L Anderson v. Peregrine Pharmaceuticals Inc et al* | | |

noting that the parties had "not identified any countervailing inconvenience, delay, confusion, or prejudice); *Takeda*, 67 F. Supp. 2d at 1133 (granting consolidation after finding that judicial economy and convenience to the party "strongly favor consolidation, and because the court ha[d] not identified any inconvenience, delay, confusion, or prejudice" that would result). Accordingly, the Court ORDERS CONSOLIDATION of the following three, related cases: SACV12-1647, CV12-8380, and CV12-8400.

III.     Appointment of Lead Plaintiff

    A.     Legal Standard for Appointment of Lead Plaintiff

Under the PSLRA, a plaintiff has 20 days from the date the complaint is filed to publish a notice of the putative class action's pendency, claims, and purported class period "in a widely circulated national business-oriented publication or wire service." 15 U.S.C. § 78u-4(a)(3)(A)(i). If more than one action is filed, only the plaintiff or plaintiffs in the first-filed action are required to publish the notice. 15 U.S.C. § 78u-4(a)(3)(A)(ii). Any member of the purported plaintiff class then has 60 days from the date on which the notice is published to file a motion to be appointed lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Within 90 days of the published notice, the court shall appoint as lead plaintiff "the member or members of the purported class that the court determines to be most capable of adequately representing the interests of class members" (the "most adequate plaintiff"). 15 U.S.C. § 78u-4(a)(3)(B)(I).

In choosing a lead plaintiff, courts must engage in a three-step process. Courts are required to adopt a presumption that the most adequate plaintiff is "the person or group of persons that – (aa) has either filed the complaint or made a motion in response to [the publication of notice of the action], (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *In re Cavanaugh,* 306 F.3d 726, 729 (9th Cir. 2002) ("[T]he presumptive lead plaintiff [is] the one who has the largest financial interest in the relief sought by the class and otherwise satisfies the requirements of Rule 23" (internal quotation marks omitted)); *Cohen v. U.S. Dist. Court for the N. Dist. of Cal.*, 586 F.3d 703, 707 (9th Cir. 2009); *Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06–31 CJC (RNBx), 2006 WL 6886020, at *3 (C.D. Cal. May 2, 2006). Accordingly, courts must first determine whether all moving plaintiffs timely filed their motions. Next, the court "must compare the financial stakes of the various plaintiffs and determine which one has the most to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**    #8/15/18/19; JS-6

| Case No. | CV 12 - 8380 PSG (FMOx) <br> CV 12-8400-PSG (FMOx) <br> SA CV 12-1647-PSG (FMOx) | Date | February 5, 2013 |
|---|---|---|---|
| Title | *Dennis W. Chew v. Peregrine Pharmaceuticals, Inc., et al.* <br> *James T Jerie v. Peregrine Pharmaceuticals Inc et al* <br> *Nathaniel L Anderson v. Peregrine Pharmaceuticals Inc et al* | | |

gain from the lawsuit"—i.e. the one with the highest financial stake in the outcome. *Cavanaugh*, 306 F.3d at 730. Once the court has identified the plaintiff with the highest financial stake, that plaintiff becomes the presumptive leave plaintiff and the court must then "determine whether that plaintiff, based on the information he provides, 'satisfies the requirements of Rule 23(a), in particular those of typicality and adequacy.'" *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-3451-LHK, 2011 WL 566814, at *2 (N.D. Cal. Feb. 15, 2011) (quoting *Cavanaugh*, 306 F.3d at 730). The court will then examine the motions of other plaintiffs, in descending order of financial interest, "if and only if the presumptive lead plaintiff is found inadequate or atypical." *Id.*

In the Ninth Circuit, the presumption in favor of appointing as lead plaintiff the plaintiff with the largest financial stake in the outcome is strictly construed. *See Ferrari v. Gisch*, 225 F.R.D. 599, 605 (C.D. Cal. 2004). The lead plaintiff presumption may only be rebutted "upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff -- (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Cavanaugh*, 306 F.3d at 730 ("The third step of the process is to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements."); *Schriver*, 2006 WL 6886020, at *3.

B.     Lead Plaintiff in this Case

i.     *Step 1 - Timeliness of Motion*

There is no question that all moving plaintiffs have met the timeliness requirement under the first step of the test. Under the Exchange Act, the plaintiff in the first-filed action must publish notice to potential class members within 20 days of filing the complaint. 15 U.S.C. § 78u-4(a)(3)(A)(ii). All actions were filed on September 28, 2012. On that same date, counsel for Chew provided notice through a BusinessWire announcement. This triggered the 60 day time period within which other plaintiffs could move to be appointed lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(I). The period expired on November 27, 2012. All moving plaintiffs filed their motions on November 27, 2012. According, all moving plaintiffs' motions were timely filed.

ii.     *Step 2 - Presumptive Lead Plaintiff with Largest Financial Stake and Who Satisfies Rule 23 Requirements*

a.     *Largest Financial Stake*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          #8/15/18/19; JS-6

| Case No. | CV 12 - 8380 PSG (FMOx)<br>CV 12-8400-PSG (FMOx)<br>SA CV 12-1647-PSG (FMOx) | Date | February 5, 2013 |
|---|---|---|---|
| Title | *Dennis W. Chew v. Peregrine Pharmaceuticals, Inc., et al.*<br>*James T Jerie v. Peregrine Pharmaceuticals Inc et al*<br>*Nathaniel L Anderson v. Peregrine Pharmaceuticals Inc et al* | | |

The Ninth Circuit has not articulated a mandatory formula for determining the plaintiff with the largest financial stake in the suit. *See Cavanaugh*, 306 F.3d at 730 n.4; *Gisch*, 225 F.R.D. at 604. Rather, "the court may select accounting methods that are both rational and consistently applied." *Cavanaugh*, 306 F.3d at 730 n.4. Courts generally examine three factors to determine which plaintiff has the largest financial stake: (1) the number of shares purchased during the class period; (2) the total net funds expended during the class period; and (3) the approximate losses suffered. *See, e.g.*, *Gisch*, 225 F.R.D. at 604 (quoting *In re Cendant Corp. Litig*, 264 F.3d 201, 262 (3d Cir. 2001)). Of these factors, courts consider the third factor—the approximate losses suffered—to be the most important in identifying the plaintiff with the largest financial stake. *See, e.g.*, *Richardson v. TVIA, Inc.*, No. 06-06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007); *Takara Trust v. Molex, Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("[M]ost courts simply determine which potential lead plaintiff has suffered the greatest total losses.").

Here, based on a review of the declarations and evidence submitted in support of the various motions, the plaintiff with the largest financial stake in the litigation appears to be Fahey. Fahey asserts that he purchased 439,000 shares of common stock in Peregrine securities during the class period by expending $1,074,933.46 in net expenditures. *Fahey Mot.* at 17:15-19; *McKenna Decl.*, Ex. B; *McKenna Decl. in Further Support*, Ex. A. Fahey additionally asserts that he purchased 8,645 option contracts for Peregrine securities and expended $775,360 for purchase of those options. *Fahey Mot.* at 17:15-19; *McKenna Decl.*, Ex. B; *McKenna Decl. in Further Support*, Ex. A. Finally, Fahey asserts that he suffered a loss of $375,269.78 as a result of Peregrine's misrepresentations. *Fahey Mot.* at 7:18; *McKenna Decl.*, Ex. B; *McKenna Decl. in Further Support*, Ex. A. The other movants assert lower numbers of shares purchased, funds expended, and losses incurred. In terms of financial losses incurred, the most important factor in evaluating financial stake, the other movants assert the following losses: the Tereshko Investors Group asserts losses of $196,361, *Tereshko Mot.* 8:1; Lee asserts losses of $156,202.58, *Lee Mot.* 8:16; and Ebach & Legnetti assert losses of $121,654.68, *see Ebach & Legnetti Mot.* 5.2. Accordingly, based the Fahey's asserted purchases, expenditures, and losses, he appears to be the plaintiff with the highest financial stake in the outcome of the litigation.

The only movant who seriously contests Fahey's status as the presumptive lead plaintiff is Lee. Lee asserts that he purchased 178,000 shares by expending $884,038.17 and suffered losses of $156,202.58. *Lee Mot.* 8:14-18; *Bower Decl.*, Ex. C. Though these losses are lower than those asserted by Fahey and the Tereskho Group, Lee asserts that neither Fahey nor the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          #8/15/18/19; JS-6

| Case No. | CV 12 - 8380 PSG (FMOx) <br> CV 12-8400-PSG (FMOx) <br> SA CV 12-1647-PSG (FMOx) | Date | February 5, 2013 |
|---|---|---|---|
| Title | *Dennis W. Chew v. Peregrine Pharmaceuticals, Inc., et al.* <br> *James T Jerie v. Peregrine Pharmaceuticals Inc et al* <br> *Nathaniel L Anderson v. Peregrine Pharmaceuticals Inc et al* | | |

Tereksho Group have a higher financial stake in the case than he does based on flaws in their accounting and evidence in support of their losses. *Lee Opp.* 7:15-10:26, 13:1-14:3.

Lee asserts two reasons that Fahey should not be considered the presumptive lead plaintiff. First, Lee contends that Fahey has not made a prima facie showing that he has the largest financial stake in the litigation because he has not submitted sufficient evidence in support of his position. *Lee Opp.* 7:15-8:6. Second, Lee contends that Fahey has no losses attributable to Peregrine's conduct because he sold all of his Peregrine stock on or before August 27, 2012, which was before Peregrine's fraud was disclosed causing the value of the stock to decrease. *Id.* 8:7-10:26.

As to the first argument, the Court concludes that Fahey has submitted adequate evidence to support his asserted losses. In support of his motion for appointment as lead plaintiff, Fahey submitted a sworn certification itemizing his purchases and sales of Peregrine securities. *McKenna Decl.*, Ex. B. This certification comports with the requirements of the PSLRA. *See* 15 U.S.C. § 78u-4(a)(2)(A). Fahey additionally submitted a sworn declaration in which he attested that he invested $1.8 million in Peregrine securities during the class period and lost $375,269.78 from those investments, *McKenna Reply Decl.*, Ex. A, and a loss calculation chart, also showing losses of $375,269.78, *McKenna Decl. in Further Supp.*, Ex. A. This evidence is sufficient at the present stage to support a finding that Fahey has the largest financial stake in the litigation. *See Cavanaugh*, 306 F.3d at 730 ("At step two of the process . . . [the court] must rely on the presumptive lead plaintiff's complaint and sworn certification; there is no adversary process to test the substance of those claims.").[2]

---

[2]Lee also contends that Fahey may not supplement the evidentiary record beyond what he submitted in support of the motion he filed on November 27, 2012. Two pieces of evidence relevant to Fahey's financial losses were submitted after November 27, 2012: the loss calculation chart and the declaration regarding his losses. *McKenna Reply Decl.*, Ex. A; *McKenna Decl. in Further Supp.*, Ex. A. Lee asserts that these pieces of evidence are untimely and must be disregarded because they were submitted after the sixty-day deadline of 15 U.S.C. § 78u-4(a)(3)(A)(I) expired. Lee cites to several cases that purportedly support this contention. However, these cases do not support the proposition that potential lead plaintiffs may not submit additional evidence in support of their motions after the sixty-day deadline has expired. Rather, these cases hold that potential plaintiffs may not change the amount of alleged losses after the deadline. *See Miller v. Dyadic Int'l, Inc.*, No. 07-80948-CIV, 2008 WL 2465286, at *5 (S.D. Fla. Apr. 18, 2008) (declining to permit the movant to add 30,000 shares to his calculated losses

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**               #8/15/18/19; JS-6

| Case No. | CV 12 - 8380 PSG (FMOx) CV 12-8400-PSG (FMOx) SA CV 12-1647-PSG (FMOx) | Date | February 5, 2013 |
|---|---|---|---|
| Title | *Dennis W. Chew v. Peregrine Pharmaceuticals, Inc., et al.* *James T Jerie v. Peregrine Pharmaceuticals Inc et al* *Nathaniel L Anderson v. Peregrine Pharmaceuticals Inc et al* | | |

Next, Lee contends that any losses Fahey may have suffered were not due to Peregrine's alleged misrepresentations because he sold all of his common stock by August 27, 2012, before the alleged misrepresentations were publicized and the value of Peregrine's stock decreased. *Lee Opp.* 8:7-10:26. Fahey purchased two types of securities during the class period: common stock and call option contracts. *McKenna Reply Decl.*, Ex. A. Fahey sold all of his common stock before the press release disclosing the discrepancies in Peregrine's clinical trials was disseminated to the public, but retained his option contracts at the time of the September 24, 2012 disclosure. *Id.* Lee contends that because Fahey sold all of his common stock before the fraud was disclosed, he did not suffer any losses attributable to his purchase of common stock and so may not count that figure toward his total losses. *Lee Opp.* 8:7-10:26. As discussed in more detail below, Lee also asserts that because Fahey did not suffer any losses from his purchase of common stock, he cannot represent a class that includes purchasers of common stock.

There appears to be some disagreement among district courts regarding whether the court should consider losses from "in-and-out" trading when assessing the amount of losses for purposes of identifying a presumptive lead plaintiff. Courts generally seem to decline to count such "in-and-out" losses in the context of a motion for appointment of lead plaintiff. *See, e.g*, *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 241 (E.D.N.Y. 2011) (declining to appoint as lead plaintiff an investor who was a "total in-and-out trader"); *Ruland v. InfoSonics*, No. 06CV1231 BTMWMC, 2006 WL 3746716, at *5 (S.D. Cal. Oct. 23, 2006) (disregarding in-and-out gains when determining which plaintiff had the highest financial stake in the outcome of the case). However, there is also some authority within the Ninth Circuit to suggest that it is not appropriate at the present stage to distinguish between actual and recoverable losses. *See Perlmutter*, 2011 WL 566814, at *6. Given that there appears to be more authority finding that losses cannot be based on "in-and-out" trading and that Fahey may encounter some difficulty in proving loss in association with his common stock purchases, the Court will only consider

---

after the sixty-day deadline, holding the movant to the amount of loss initially claimed); *Singer v. Nicor*, No. 02 C 5168, 2002 U.S. Dist. LEXIS 19884, at *9 (N.D. Ill. Oct. 17, 2002) ("[T]he Court will not consider the candidates' *amendment* of their amount of financial loss made after the [PSLRA] filing deadline.") (emphasis added)). Because Fahey does not seek to amend the amount of his financial loss, but merely has submitted additional evidence of his losses in response to Lee's opposition, the cases to which Lee cites are inapposite. The Court may appropriately consider the evidence submitted after the November 27, 2012 deadline.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    #8/15/18/19; JS-6

| Case No. | CV 12 - 8380 PSG (FMOx) <br> CV 12-8400-PSG (FMOx) <br> SA CV 12-1647-PSG (FMOx) | Date | February 5, 2013 |
|---|---|---|---|
| Title | *Dennis W. Chew v. Peregrine Pharmaceuticals, Inc., et al.* <br> *James T Jerie v. Peregrine Pharmaceuticals Inc et al* <br> *Nathaniel L Anderson v. Peregrine Pharmaceuticals Inc et al* | | |

whether losses from Fahey's option contract purchases make him the presumptively most adequate plaintiff.

A review of the record reveals that Fahey's asserted losses from his call option contracts exceed the asserted losses of the competing movants, even when the Court discounts his losses from the purchase of common stock. *McKenna Reply Decl.*, Ex. A. While Fahey sold his common stock before the disclosures that caused the stock's value to plummet, he also purchased the call option contracts purchased during the Class Period and was in possession of those contracts when the discrepancies were revealed on September 24, 2012. *Id.* Fahey asserts that he lost $279,840 on the call contract options he was holding at the end of the Class Period. *Id.*; *McKenna Decl. in Further Support*, Ex. A. The loss of $279,840 on call option contracts alone makes Fahey's losses greater than Lee's losses, which total $156,202. *Lee Mot.* 8:14-18; *Bower Decl.*, Ex. C. Further, these losses alone are greater than the asserted losses of any other movant. *Tereshko Mot.* 8:1; *Ebach & Legnetti Mot.* 5.2. As such, the Court concludes that Fahey has asserted the largest approximate losses suffered, and so has demonstrated the greatest financial stake in the litigation. *See Gisch*, 225 F.R.D. at 604; *Richardson v. TVIA, Inc.*, 2007 WL 1129355, at *4.

                b.      *Adequacy and Typicality Under Rule 23*

Rule 23(a) "imposes four requirements [for class certification]: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact and law common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Schriver*, 2006 WL 6886020, at *5 (citing Fed. R. Civ. P 23(a)). For the purposes of appointment of lead plaintiff, the court must only examine typicality and adequacy. *Cavanaugh*, 306 F.3d at 730. Determining whether a movant satisfies the FRCP 23 requirements at the lead plaintiff stage "is not as searching as it would be on a motion for class certification," and, as such, "the prospective lead plaintiff need only make a prima facie showing that it meets the [FRCP 23] typicality and adequacy factors." *Schriver*, 2006 WL 6886020, at *5 (citations omitted). Moreover, at step two of the process, courts rely on the facts as set out by the movant: the court must focus its attention on the plaintiff with the highest financial stake "and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Cavanaugh*, 306 F.3d at 730.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            #8/15/18/19; JS-6

| Case No. | CV 12 - 8380 PSG (FMOx) <br> CV 12-8400-PSG (FMOx) <br> SA CV 12-1647-PSG (FMOx) | Date | February 5, 2013 |
|---|---|---|---|
| Title | *Dennis W. Chew v. Peregrine Pharmaceuticals, Inc., et al.* <br> *James T Jerie v. Peregrine Pharmaceuticals Inc et al* <br> *Nathaniel L Anderson v. Peregrine Pharmaceuticals Inc et al* | | |

The typicality requirement of Rule 23 is satisfied when the representative plaintiff's claims arise out of the same event or course of conduct as do the other class members' claims and are based on the same legal theories. *Takeda,* 67 F. Supp. at 1137. The representative plaintiff's claims need not be identical to those of absent class members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Rather "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.*; *Puente v. Chinacast Educ. Corp.*, No. CV 12-4621 JFW (PLAx), 2012 WL 3731822, at *3 (C.D. Cal. Aug. 22, 2012).

Here, Fahey's claims are substantially identical to those of the absent class members. Fahey claims to have purchased Peregrine securities at inflated prices during the class period. Fahey further claims to have suffered financial harm due to Defendants' misrepresentations and omissions, in violation of federal securities laws, because the value of his securities decreased when the truth regarding Peregrine's product was publicly revealed. *Fahey Mot.* 8:25-9:7. Fahey attested to such purchases and losses in a declaration submitted in support of his motion. *McKenna Reply Decl.*, Ex. A. Accordingly, based on the information provided in Fahey's motion and declaration, Fahey has made a prima facie showing that he is typical of the class he seeks to represent. *See Cavanaugh*, 306 F.3d at 730; *Hanlon*, 150 F.3d at 1020; *Schriver*, 2006 WL 6886020, at *5.

Fahey has also made a prima facie showing that he is adequate to represent the class. In the Ninth Circuit, a plaintiff is "'adequate' when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive." *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 667 (C.D. Cal. 2005) (citing *In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982)). Additionally, "the class representative must have a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Id.* As noted above, however, the adequacy determination is not as strict in the context of the appointment of a lead plaintiff as it is on a motion for class certification. *Schriver*, 2006 WL 6886020, at *5. "Adequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests between the proposed lead plaintiffs and the class, and a willingness on the part of the proposed plaintiff to vigorously prosecute the action." *Tanne*, 226 F.R.D. at 667-68 (finding plaintiff adequate because he had the largest financial stake in the outcome, ensuring vigorous advocacy, and had represented that he was committed to the prosecution of the case).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     #8/15/18/19; JS-6

| Case No. | CV 12 - 8380 PSG (FMOx)<br>CV 12-8400-PSG (FMOx)<br>SA CV 12-1647-PSG (FMOx) | Date | February 5, 2013 |
|---|---|---|---|
| Title | *Dennis W. Chew v. Peregrine Pharmaceuticals, Inc., et al.*<br>*James T Jerie v. Peregrine Pharmaceuticals Inc et al*<br>*Nathaniel L Anderson v. Peregrine Pharmaceuticals Inc et al* | | |

Here, as discussed above, Fahey has the largest financial stake in the outcome of the litigation, ensuring vigorous advocacy on behalf of the class. *See id.* Further, Fahey has represented that he is committed to the prosecution of the case. *Fahey Mot.* 8:1-10:4. Accordingly, Fahey has made a prima facie showing that he is adequate to represent the class. *See Tanne*, 226 F.R.D. at 667-68.

### iii.     Step 3 - Response by Other Plaintiffs

Once the court has identified the presumptively most adequate plaintiff, that presumption "may be overcome only upon proof that the presumptively most adequate plaintiff 'will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Cavanaugh*, 306 F.3d at 741 (Wallace, J., concurring) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). The court may not compare potential lead plaintiffs to determine which is "more typical" or "more adequate," but may only assess whether the presumptive lead plaintiff is atypical or inadequate. *Id.* at 731. The district court is required to appoint the presumptive lead plaintiff "and may remove [that plaintiff] from that position *only* after a finding that they are inadequate." *Id.* (remanding appointment of lead plaintiff because the district court had engaged in a comparative assessment of the competing plaintiffs' adequacy, rather than assessing only whether the competing movants had proven that the presumptive plaintiff was not adequate); *Tanne*, 226 F.R.D. at 669 ("[O]nce the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job." (quoting *Cendant Corp.*, 264 F.3d at 268).

The movant seeking to rebut the presumptive lead plaintiffs' appointment must submit proof that the presumptive lead plaintiff is inadequate or atypical. *See Cavanaugh*, 306 F.3d at 741; *Hufnagle v. Rino Int'l Corp.*, No. CV 10-8695-VBF (VBKx), 2011 WL 710704, at *3, 7-8 (C.D. Cal. Feb. 14, 2011) (finding that competing movants had failed to rebut the presumptive plaintiff's appointment because they had failed to submit proof in support of their arguments that it was inadequate, atypical, or subject to unique defenses); *Tanne*, 226 F.R.D. at 669; *Gisch*, 225 F.R.D. at 610 (finding presumption not overcome when competing plaintiffs had proffered no evidence that the presumptive lead plaintiff would not fairly and adequately represent the class). A competing movant may not overcome the presumption by mere arguments in opposition to the presumptive lead plaintiff's adequacy and typicality. *See Hufnagle*, 2011 WL 710704, at *7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    #8/15/18/19; JS-6

| Case No. | CV 12 - 8380 PSG (FMOx) <br> CV 12-8400-PSG (FMOx) <br> SA CV 12-1647-PSG (FMOx) | Date | February 5, 2013 |
|---|---|---|---|
| Title | *Dennis W. Chew v. Peregrine Pharmaceuticals, Inc., et al.* <br> *James T Jerie v. Peregrine Pharmaceuticals Inc et al* <br> *Nathaniel L Anderson v. Peregrine Pharmaceuticals Inc et al* | | |

Lee is the only movant who contests Fahey's status as lead plaintiff.  The Tereksho Investor Group, which facially appears to have the second highest financial stake in the outcome of the case, submitted a response to the competing motions in which it identified Fahey as the apparent presumptive lead plaintiff and did not challenge Fahey's typicality or adequacy. *See* Dkt. # 33.  Ebach & Lignetti have similarly not challenged Fahey's typicality or adequacy.  Lee, however, seeks to rebut Fahey's status as presumptive lead plaintiff by arguing that Fahey is atypical and inadequate because he suffered losses from the purchase of call options, while other class members suffered losses from the purchase and sale of common stock. *Lee Opp.* 11:7-9. Lee asserts that there are factual issues unique to option trading that make Fahey an unsuitable plaintiff to serve on behalf of stockholders. *Id.* 11:23-26.  Lee also asserts that, as a result of his status as an options purchaser, Fahey may be subject to unique defenses, rendering him an inappropriate class representative. *Id.* 12:22-27.

As a preliminary matter, the Court is not necessarily persuaded that Fahey should be treated only as an option trader, given that he also purchased common stock during the class period. *See McKenna Decl.*, Ex. A.  However, as noted above, Fahey appears to have bought and sold all his Peregrine common stock during the class period, making him an "in-and-out" trader and potentially creating serious difficulties in proving loss causation in connection with his purchases of common stock. *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341 (2005).  In order to succeed on a claim for securities fraud, the plaintiff must establish a causal link between the financial loss and the alleged misrepresentation or omission. *Id.*  Courts have declined to appoint as lead plaintiffs investors who appeared to be "in-and-out" traders because of their likely inability to prove loss causation. *See, e.g.*, *Bensley*, 277 F.R.D. at 241; *Arduini/Messina P'ship v. Nat'l Med. Fin. Servs. Corp.*, 74 F. Supp. 2d 352, 360 (S.D.N.Y. 1999).  Though Fahey asserts that other events prior to the public disclosure of the fraud on September 24, 2012 may have caused a decline in the value of stock and support a finding that Fahey's losses were caused by the misrepresentations and omissions even though he sold his stock during the class period. *Fahey Reply* 8:12-22.  However, at the present junction, there is nothing before the Court that would suggest that other events caused the decline in the value of the stock, even though such facts may materialize at a later point in litigation.  Accordingly, given the hurdles Fahey may face in proving loss causation based on his common stock, the Court considers whether Fahey is an adequate representative based on his status as a purchaser of options only.

As the party seeking to rebut the presumption that Fahey is the most adequate plaintiff, Lee bears the burden of submitting proof in support of his assertion that Fahey is atypical and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    #8/15/18/19; JS-6

| Case No. | CV 12 - 8380 PSG (FMOx) <br> CV 12-8400-PSG (FMOx) <br> SA CV 12-1647-PSG (FMOx) | Date | February 5, 2013 |
|---|---|---|---|
| Title | *Dennis W. Chew v. Peregrine Pharmaceuticals, Inc., et al.* <br> *James T Jerie v. Peregrine Pharmaceuticals Inc et al* <br> *Nathaniel L Anderson v. Peregrine Pharmaceuticals Inc et al* | | |

inadequate.  *See Miller v. Dyadic Int'l, Inc.*, No. 07-80948-CIV, 2008 WL 2465286, at \*7 (S.D. Fla. Apr. 18, 2008); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1151 (N.D. Cal. 1999).  The Court is not persuaded that Lee has met this burden.  At the present stage of litigation, the class consists of all purchasers of Peregrine "securities."  *See Bower Decl.*, Ex. B. The class was defined as "purchasers of Peregrine securities" in the notice in BusinessWire, *id.*, and is defined as such in two of the three operative complaints, *see Anderson Compl.* ¶ 38; *Chew Compl.* ¶ 28; *Jerie Compl.* ¶ 36.  The class has not been narrowed to purchasers of a particular type of security, nor has the class been otherwise subdivided.  Lee has submitted no evidence suggesting that the class includes only investors who, like he, purchased common stock. Accordingly, the Court assumes that the prospective class will be comprised of purchasers of various types of securities, including common stock, call options, and potentially other types of securities.

Lee contends that because Fahey's only losses are from the purchase of call options, he cannot represent a class of investors who purchased common stock.  In making this claim, however, Lee oversimplifies the relevant law.  Lee is correct that several courts have declined to appoint as lead plaintiff an investor who purchased options when the class was comprised of class members who purchased various securities.  *See, e.g.*, *Applestein v. Medivation, Inc.*, No. C 10-00998 MHP, 2010 WL 3749406, at \*4 (N.D. Cal. Sept. 20, 2010);  *In re Elan Corp. Sec. Litig.*, No. 08-cv-8761-AKH, 2009 WL 1321167, at \*2 (S.D.N.Y. May 11, 2009) ("Kleinman traded exclusively in call options, not common stock or ADRs.  Kleinman is thus an atypical and inadequate plaintiff, as he would introduce factual issues irrelevant to the stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict." (internal citation omitted); *Andrada v. Atherogenics, Inc.*, No. 06 Civ. 00061 (RJH), 2005 WL 912359, at \*5 (S.D.N.Y. Apr. 19, 2005); *Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 390 (D.N.J. 1998).  There are, however, also several examples of courts concluding that the lead plaintiff's status as a purchaser of options did not render him atypical of a class comprised of purchasers of other types of securities.  *See, e.g.*, *In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1329-31 (N.D. Ga. 2007); *In re Priceline.com, Inc. Sec. Litig.*, 236 F.R.D. 89, 98-100 (D. Conn. 2006); *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 123-24 (S.D.N.Y. 2001); *Tolan v. Computervision Corp.*, 696 F. Supp. 771, 777-78 (D. Mass. 1988).

These cases demonstrate that the type of security purchased is not dispositive as to whether a plaintiff is typical and adequate.  *See*, *Tolan*, 696 F. Supp. 779 (stating that the issue in determining typicality "is not the type of security in which an investor trades").  Indeed, "a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    #8/15/18/19; JS-6

| Case No. | CV 12 - 8380 PSG (FMOx) <br> CV 12-8400-PSG (FMOx) <br> SA CV 12-1647-PSG (FMOx) | Date | February 5, 2013 |
|---|---|---|---|
| Title | *Dennis W. Chew v. Peregrine Pharmaceuticals, Inc., et al.* <br> *James T Jerie v. Peregrine Pharmaceuticals Inc et al* <br> *Nathaniel L Anderson v. Peregrine Pharmaceuticals Inc et al* | | |

difference in the amount of damages, date, size, or manner of purchase, the type of purchaser, and even the specific document influencing the purchase will not render the claim atypical in most securities actions." *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981). Rather, in each of the above-cited cases, the dispositive question was "whether both the named plaintiffs' injuries and the injuries of the class resulted from reliance on the integrity of the market price of [the] stock." *Tolan*, 696 F. Supp. at 778. When the option purchaser's claims were based on the integrity of the market, which was allegedly undermined by the defendants' misrepresentations and omissions, courts have found the option purchaser's claim to be typical of the class of purchasers of various securities. *See, e.g.*, *Scientific-Atlanta*, 571 F. Supp. 2d at 1329-31; *Priceline.com*, 236 F.R.D. at 98-100. In contrast, "[t]he courts that have found an option trader's, or a short seller's, claims to be atypical have based their conclusions on the premise that the plaintiff did not rely upon the efficiency of the market to process information and set a price, but rather upon considerations extraneous to the price of the underlying share." *Id.* at 100; *see also Applestein*, 2010 WL 3749406, at *4; *Andrada*, 2005 WL 912359, at *5.

Thus, the question in the present case is whether Fahey relied on the integrity of the market in purchasing Peregrine securities—if so, his claims may be considered typical of the class; if not, his claims may be considered atypical. Here, in addition to purchasing common stock, Fahey purchased call option contracts. *McKenna Reply Decl.*, Ex. A. A call option is a contract that permits the purchaser to buy Peregrine stock from the seller at a particular price. *Fahey Reply*. 4:5-6. In general, the value of an option is tied to the value of the underlying stock, such that an options purchaser profits when the stock maintains or increases value and loses when the stock decreases in value—just like a common stock purchaser. *Deutschman v. Beneficial Corp.*, 841 F.2d 502, 504 (3d Cir. 1988) ("Because the market value of an option contract is responsive to changes in the market price of the underlying stock, holders of option contracts are susceptible to two separate types of deceptive practices: insider trading and affirmative misrepresentation."); *Tolan*, 696 F. Supp. at 779 ("Traders in puts and in calls rely on the integrity of information disseminated in the market just as do the purchasers and sellers of the underlying securities."); *Scientific-Atlanta*, 571 F. Supp. 2d at 1330 (discussing the same principle in regard to put options, in which the value of the option is inversely, rather than directly, proportional to the value of the underlying stock). Fahey asserts in his declaration that he purchased common stocks and call options during the class period "because, based on the publicly available information at the time of [the] purchases, [he] anticipated that the price of Peregrine stock would rise." *McKenna Reply Decl.*, Ex. A. Fahey asserts that he relied on Peregrine's statements and the integrity of the market in purchasing the options, and held the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**              #8/15/18/19; JS-6

| Case No. | CV 12 - 8380 PSG (FMOx)<br>CV 12-8400-PSG (FMOx)<br>SA CV 12-1647-PSG (FMOx) | Date | February 5, 2013 |
|---|---|---|---|
| Title | *Dennis W. Chew v. Peregrine Pharmaceuticals, Inc., et al.*<br>*James T Jerie v. Peregrine Pharmaceuticals Inc et al*<br>*Nathaniel L Anderson v. Peregrine Pharmaceuticals Inc et al* | | |

securities in the hope that they would increase in value. *Id.* Accordingly, Fahey, like absent class members, purchased Peregrine securities in reliance on the integrity of the market, based on Peregrine's representations, making him typical of the class.

The Court finds two cases particularly relevant in reaching this conclusion. In *Tolan*, the Court addressed the typicality of traders in put and call options in the context of a motion for class certification. *Tolan*, 696 F. Supp. at 777-80. In Tolan, three traders in put and call options sought to represent a class of investors who had purchased stock and stock options in Computervision. *Id.* at 771. The court concluded that the plaintiffs were typical of the class, despite being call purchases, because "all three made their investment decisions in reliance on the integrity of the market price," specifically relying on the price of the stock to accurately reflect information dissemination in the market. *Id.* at 780. Because of this reliance, they would, like common stock purchasers, suffer injury if Computervision made fraudulent misrepresentations of material fact. *Id.* Accordingly, the putative plaintiffs, like all class members, alleged that they were injured by Computervision's statements and omissions, making them typical of the class. *Id.* The *Tolan* Court stated that it was "of no consequence that the putative plaintiffs devised different investment strategies" from other class members." *Id.* Likewise, in the present case, Fahey alleges the same injures due to the same conduct as the class: like the rest of the class, he alleges that he purchased stock in reliance on the integrity of the market and suffered losses due to purchasing securities at an artificially inflated rate. Therefore, as in *Tolan*, the Court is persuaded that Fahey's claims are typical of the class.

The Court also finds the decision in *Priceline* instructive. In *Priceline*, the court found a put option purchaser typical of the class because the purchaser "testified that his practice of writing put options was founded upon the integrity of the price of the underlying shares, which, as the class alleges, was determined by an efficient market." *Priceline*, 236 F.R.D. at 100. The court approved of the investor's appointment as class representative "because, notwithstanding his trading in put options . . . his interests [were] aligned with those of the class and 'the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price,' remain[ed] in tact. *Id.* (quoting *Basic, Inc. v. Levinson*, 485 U.S. 224, 248 (1988)). Here, similarly, notwithstanding that Fahey traded in options, his interests are aligned with the class because he, like the class, relied on the integrity of the price of Peregrine stock and so his claims are typical of the class.

Finally, the Court is not persuaded that any of the cases to which Lee cites support a different conclusion. In each of the cases to which Lee cites, the courts concluded that an option

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    #8/15/18/19; JS-6

| Case No. | CV 12 - 8380 PSG (FMOx) <br> CV 12-8400-PSG (FMOx) <br> SA CV 12-1647-PSG (FMOx) | Date | February 5, 2013 |
|----------|------------------------------------------------------------------------------------|------|------------------|
| Title | *Dennis W. Chew v. Peregrine Pharmaceuticals, Inc., et al.* <br> *James T Jerie v. Peregrine Pharmaceuticals Inc et al* <br> *Nathaniel L Anderson v. Peregrine Pharmaceuticals Inc et al* | | |

trader was not typical of the class of common stock purchases. However, the conclusions in those cases were not based solely on the fact that the putative plaintiffs had purchased option contracts instead of another form of security. In each of those cases, the putative plaintiff had not relied on the integrity of the market in making their investment decisions or there were other factual circumstances distinguishing the case from the present action. *See Applestein*, 2010 WL 3749406, at *4 (finding an option trader atypical when he had not owned a single share of stock during the class period and made his investment decisions based on different information than other class members); *Elan Corp*, 2009 WL 1321167, at *2 (appearing to compare the relative qualifications of potential plaintiffs, which the Ninth Circuit has held to be impermissible in a motion for appointment of lead counsel); *Andrada*, 2005 WL 912359, at *5 (declining to appoint as lead plaintiff an investor who had only purchased call options and not any of the underlying stock); *Weikel*, 183 F.R.D. at 390 (declining to appoint as lead plaintiff an options investor when there was no evidence that any options related to the relevant stock were openly traded and it did not appear that anyone else had purchased option stock, making the argument that the investor had relied on the integrity of the market to be inapplicable).

In sum, Lee has not met his burden of submitting proof that would overcome the presumption that Fahey is the most adequate Plaintiff. Accordingly, the Court APPOINTS Fahey as lead plaintiff.

IV.     Whether Lee Is Entitled to Discovery

Lee additionally requests discovery into Fahey's loss calculations, trading history, and trading strategy in order to determine Fahey's actual financial interest in the litigation and whether Fahey is typical and adequate to represent the class. *Lee Opp.* 10:13-26. After Lee submitted his request for discovery, Fahey submitted additional evidence that allays any concerns the Court may have had about Fahey's financial interest and adequacy. Specifically, Lee requests evidence of loss calculations and additional information regarding what information Fahey relied upon in making his investment decisions. *Opp.* 10:7-17. Lee appeared particularly concerned that Fahey had not yet established that he relied on the integrity of the market. *Id.* 10:7-12. Subsequently, Fahey submitted a loss calculation chart and a declaration in which he stated that he had relied on the integrity of the market in making his investment decisions. Accordingly, it no longer appears necessary to conduct additional discovery.

V.     Appointment of Lead Counsel

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    #8/15/18/19; JS-6

| Case No. | CV 12 - 8380 PSG (FMOx) <br> CV 12-8400-PSG (FMOx) <br> SA CV 12-1647-PSG (FMOx) | Date | February 5, 2013 |
|---|---|---|---|
| Title | *Dennis W. Chew v. Peregrine Pharmaceuticals, Inc., et al.* <br> *James T Jerie v. Peregrine Pharmaceuticals Inc et al* <br> *Nathaniel L Anderson v. Peregrine Pharmaceuticals Inc et al* | | |

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). In general, the choice of counsel is in the hands of the lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(v); *Gisch*, 225 F.R.D. at 610. A court may reject the lead plaintiff's choice of counsel "only if it appears necessary to 'protect the interests of the class.'" *Id.* (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

Fahey has selected Gainey & McKenna to serve as lead counsel for the class. Gainey & McKenna appears to be experienced in the area of securities litigation and class actions, having been appointed as lead counsel or co-lead counsel in many securities class actions. *McKenna Decl.*, Ex. C. Fahey additionally has selected Stull, Stull & Brody to serve as liaison counsel. Like Gainey & McKenna, Stull, Stull & Brody has experience litigating securities class actions and has served as counsel and co-lead counsel in many such cases. *Id.*, Ex. D.

Lee has raised several concerns regarding Gainey & McKenna's ability to protect the interests of the class. *Lee Reply* 5:1-9:18. In opposition to Fahey's appointment as lead counsel and selection of Gainey & McKenna as lead counsel, Lee submitted a brief Gainey & McKenna filed in an unrelated case, which appears to contain nearly identical language to briefs submitted in a different case filed several years earlier. *Id.* 5:16-7:23. Lee contends that that these filings are evidence that Gainey & McKenna submitted a brief in which it plagiarized the work of another firm. *Id.* 7:1; *Bower Reply Decl.*, Exs. A-D. However, a review of the docket of the two cases reveals that Gainey & McKenna is listed as an attorney of record in both of the two cases to which Lee refers. *See Smyth v. Chang, et al.*, No. 1:12-cv-01262-RGA (D. Del. 2012); *Buettgen v. Harless, et al.*, No. 3:09-cv-0007910K (N.D. Tex. 2009). The Court does not comment on the merits of submitting two substantially identical briefs in unrelated cases, but given that Gainey & McKenna appears to have been involved in both actions, the Court cannot conclude based on the evidence on the record that the firm has plagiarized the work of another firm or otherwise acted in bad faith such that it should not be appointed as counsel in the present action.

Lee also asserts that Fahey has failed to demonstrate that Gainey & McKenna has the resources to prosecute the action effectively because he has failed to provide evidence of how many attorneys the firm has and the experience of the firm's attorneys. *Lee Reply* 8:7-10, 8:20-21. Lee contends that, based on an internet search of the firm, it appears to be composed of only two attorneys in two separate offices. *Id.* 8:20-21. Insofar as Lee appears to contend that Fahey must submit evidence in support of his chosen counsel's competency, this is not the law. As

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**           #8/15/18/19; JS-6

| Case No. | CV 12 - 8380 PSG (FMOx)<br>CV 12-8400-PSG (FMOx)<br>SA CV 12-1647-PSG (FMOx) | Date | February 5, 2013 |
|---|---|---|---|
| Title | *Dennis W. Chew v. Peregrine Pharmaceuticals, Inc., et al.*<br>*James T Jerie v. Peregrine Pharmaceuticals Inc et al*<br>*Nathaniel L Anderson v. Peregrine Pharmaceuticals Inc et al* | | |

noted above, the choice of lead counsel is generally left to the lead plaintiff and may be disturbed only if it appears necessary to do so in order to protect the class. *See Gisch*, 225 F.R.D. at 610. Further, any concerns the Court may have regarding whether Gainey & McKenna has sufficient resources to prosecute the case are assuaged by the appointment of Stull, Stull & Brody as liaison counsel. The latter firm has significant experience acting as counsel in class actions, including securities class actions, and their participation in the case will compensate for any deficiency in resources or manpower Gainey & McKenna may have. *McKenna Decl.*, Ex. D. Accordingly, the Court is not persuaded that it is necessary to reject Fahey's choice of counsel in order to protect the interests of the class and the Court APPOINTS Gainey & McKenna as lead counsel and Stull, Stull & Brody as liaison counsel.

VI.     Conclusion

Based on the foregoing, the Court orders the following:

- The Court CONSOLIDATES the related cases SACV12-1647, CV12-8380, and CV12-8400. The related cases, CV 12-8380 CV12-8400, are hereby closed, and all subsequent papers, pleadings, and motions shall be filed under the low numbered case, *Anderson v. Peregrine Pharmaceutical, Inc., et al.*, SACV 12-1647 PSG (FMOx).

- The Court GRANTS Fahey's Motion to Consolidate and for Appointment as Lead Plaintiff and Approval of Choice of Counsel. Therefore, the Court APPOINTS Fahey as lead plaintiff and APPOINTS Fahey's attorneys from the Gainey & McKenna as lead counsel and Stull, Stull & Brody as liaison counsel.

- Fahey shall file a CONSOLIDATED COMPLAINT no later than sixty (60) days from the date of this order, or by **April 8, 2013.** Defendants' response is due sixty (60) days thereafter, or no later than **June 7, 2013.**

**IT IS SO ORDERED.**